SALVATORE EAMIELLO v. DOMINIC PISCITELLI ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued December 5, 1946—decided February 5, 1947

*Louis Feinmark,* with whom was *John A. Mele,* for the appellant (plaintiff).

*David M. Reilly,* with whom was *Robert B. Vining,* for the appellees (defendants).

BROWN, J. On the night of October 25, 1944, the plaintiff, while walking westerly on the southerly side of Spring Street in West Haven, was struck and injured by the defendants' automobile as it overtook him from behind and was passing to the left of another car proceeding in the same direction. The plaintiff brought this action to recover. Judgment was rendered for the defendants. The plaintiff has appealed, assigning error in the court's charge to the jury, refusal to correct the finding and rulings upon evidence.

Spring Street in the vicinity in question extends in a general easterly and westerly direction through a tract of marshland upon a fill which is abutted on either side by a ditch full of water. There is a line of utility poles along each side of the street, and the width of the hardened surface of the roadway between these pole lines is thirty feet. There is no sidewalk, but there is a sand path located north of the line of poles on the north side of the highway. The plaintiff, about 11 p.m., was walking westerly on the south side of the highway, two feet from its southerly edge as he claimed, seven feet therefrom as claimed by the defendants. It was further claimed by the plaintiff that the place where he was

walking was a part of the south shoulder of the road, while the defendants claimed that this place was part of the hardened surface and that there was no south shoulder. While the plaintiff was thus proceeding, a man named Lane was driving his car westerly on the northerly half of the road at a speed of from twenty to twenty-five miles per hour. As the Lane car was approaching the plaintiff from the rear, the defendant Piscitelli, hereinafter referred to as the defendant, operating the car of the defendant owner, drove up in back of the Lane car and turned his car to the left to pass. As the two cars were proceeding about abreast, the defendants' car struck the plaintiff. The headlights of both cars were lighted but the defendant did not see the plaintiff before his car struck him. In answer to an interrogatory, the jury found that there was no shoulder on the south side of the highway.

The plaintiff has assigned error in the court's charge defining what constitutes the shoulder of the road as distinguished from the hardened surface intended for normal travel. No objection was made to these instructions as required by § 156 of the Practice Book, but the plaintiff contends that the rule should not be applied in this instance because he had fully stated his claim upon this point to the court in chambers during the trial in response to its inquiry. The court's refusal to find that such was the fact has also been assigned as error. The court did find that it was impossible for it to recall the discussion in chambers with sufficient accuracy to summarize it, and that it had had no reason to understand that counsel intended to rely upon this discussion as a substitute for requests to charge or objections to the charge under § 156. No proceed-

ings to rectify the appeal were taken under § 365 of the Practice Book, and the finding is conclusive. Therefore this record does not present a situation so unusual that we will consider the error claimed notwithstanding the plaintiff's failure to comply with the rule. See *Seaboard Freight Line, Inc.* v. *Castro Electric Co.*, 132 Conn. 572, 46 A.2d 10.

The plaintiff requested the court to charge that it is a common safety practice for a pedestrian on a road having no sidewalks to walk on his left side of the road so as to face oncoming traffic, instead of walking on the right with his back to such traffic, and that in passing upon whether the plaintiff was contributorily negligent the jury might give consideration to the fact that the plaintiff had the right to have that custom in mind in deciding which side of the road to walk on, if from their experience they believed it to be true. The court did not so charge but, having instructed the jury on the common-law rules and statutes applicable, further charged them that the pedestrian had equal rights in the street with the operator of the automobile, and that under the circumstances in this case both the pedestrian and the motorist might travel in any part of the highway they pleased, "but subject to all applicable statutes in the event other traffic is encountered." The finding contains no claim of proof that it was the custom or practice of pedestrians to walk on the left, and the court could not take judicial notice of any such custom if it existed, even though it might of the fact that persons do walk on both sides of the highway. That such a practice existed would not, as regards the jurors, be a matter of the observation of a simple fact; the determination of it could only result from a broad course of observation and com-

parison and a conclusion reached therefrom. To have instructed the jury to consider it if their common experience led to the belief that it existed would have been an invitation to them to consider a conclusion which in all probability would not be founded on an observation and comparison sufficiently broad properly to sustain it. The instruction given correctly and sufficiently stated the rights and duties of the parties in the use of the highway in so far as this issue was concerned and the court did not err in refusing to charge as requested.

But one other error assigned in the charge as given requires mention. This attacks the court's instructions concerning a rule of the road contained in § 544e of the 1939 Cumulative Supplement, which amended § 1639 of the General Statutes, as related to the claimed contributory negligence of the plaintiff in failing to turn to the right to permit the overtaking car of the defendants to pass. Upon this issue the court charged: "If you find that the plaintiff was on the hardened, that is, the travelled portion of the highway, . . . then under the statute, as applied to the facts of this case, he was obligated to yield the entire south half of the travelled portion of the road to the defendant as soon as practicable, and his failure so to do would be negligence. Now 'as soon as practicable' means as soon as he knew, or in the exercise of reasonable care should have known, that the defendant was going to arrive at a point where he would overtake the plaintiff." To this charge the plaintiff made this objection, pursuant to § 156 of the Practice Book: "We . . . claim that as far as the application of Section 1639 is concerned . . . the court should have instructed the jury that if a pedestrian is on the highway he

is not limited to going across the roadway but has the choice of going over to his right or over to the shoulder of the road on his left." The court described the duty of the plaintiff as being to yield the south half of the road to the defendant. On the claims of proof it was not required to go further. Beyond this we express 'no opinion concerning the plaintiff's contention.

A number of the errors assigned in the court's rulings upon evidence relate to its exclusion of persistent and repeated inquiries on behalf of the plaintiff to show that the place where he was walking when struck was one commonly used by pedestrians, as bearing upon the defendant's claimed negligence and also upon the degree of care used by the plaintiff. In so far as the defendant's negligence is concerned, the questions were properly excluded since it did not appear that he either knew or was chargeable with knowledge of such custom or use. Whether they were admissible to prove the plaintiff's due care involves other considerations. When the question whether a person has exercised the care of a reasonably prudent person requires taking into account circumstances beyond the scope of that common knowledge and experience which triers are presumed to have or have had, we have repeatedly held that evidence of the usual or customary practice of persons similarly situated is admissible. *Hazard Powder Co.* v. *Somersville Mfg. Co.,* 78 Conn. 171, 178, 61 A. 519; *Ferrie* v. *Sperry,* 85 Conn. 337, 343, 82 A. 577; *Olesen* v. *Beckanstin,* 93 Conn. 614, 620, 107 A. 514; *Dibble* v. *New York, N. H. & H. R. Co.,* 100 Conn. 130, 140, 123 A. 124; *Pope Foundation, Inc.* v. *New York, N. H. & H. R. Co.,* 106 Conn. 423, 435, 138 A. 444; *Sickmund* v. *Connecticut Co.,* 122

Conn. 375, 383, 189 A. 876; *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221, 224, 10 A.2d 600; and *Miller* v. *Poli's New England Theatres, Inc.*, 125 Conn. 610, 614, 7 A.2d 845. In *Bassett* v. *Shares*, 63 Conn. 39, 27 A. 421, the plaintiff claimed damages for injuries due to the negligence of the defendant in leaving two horses attached to a wagon unhitched and without bridles at a place where falling material from a nearby building in course of erection would be likely to frighten them; a question asked of a witness by the defendant whether the team was "standing in the ordinary place in the ordinary way" was excluded (p. 42). We sustained the ruling, stating (p. 43): "The general rule unquestionably is that a party charged with negligent conduct will not be allowed to show that such conduct was common or customary among those . . . placed under like circumstances and owing the same duties."

A common practice or custom is not permitted to be shown for the purpose of establishing that practice or custom as the standard upon the basis of which conduct is to be held negligent or not negligent, but merely as evidence for the assistance of the trier in determining whether the conduct of the person charged with negligence was in the particular situation that of a reasonably prudent person. *Maynard* v. *Buck*, 100 Mass. 40, 43; 2 Wigmore, Evidence (3d Ed.) § 461. In such a case it may be admitted as "evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not." *Texas & Pacific Ry. Co.* v. *Behymer*, 189 U. S. 468, 470, 23 S. Ct. 622, 47 L. Ed. 905. The distinction between a proper and improper use of such evidence is often not easy to draw, and there

is danger that a trier will give too much weight to the evidence; and this would be particularly true of a jury, no matter how strongly they may be cautioned not to do so. 2 Wigmore, op. cit., p. 492. As is stated in *Simonds* v. *Baraboo,* 93 Wis. 40, 44, 67 N. W. 40: "At the foundation of the rule lies the idea that the act constituting the subject of the custom is one in respect to which the manner of doing it is not a matter of common knowledge. If this were lost sight of, and evidence allowed to prove the customary way of doing anything, however common, a rule which, restricted within reasonable limits, promotes the due administration of justice, would be quite likely to have the very opposite effect." Where the evidence in a case is such that the trier, applying to the facts found proven the common knowledge and experience of men in general, has an adequate basis for determining whether the conduct in question is that of an ordinarily prudent person, the practice of other persons would serve no sufficient purpose to justify its admission, especially in a jury trial where it might create confusion as to the ultimate test to be applied. Thus in *Kolsti* v. *Minneapolis & St. Louis Ry. Co.,* 32 Minn. 133, 134, 19 N. W. 655, it is said: "When the question is, did a person use ordinary care in a particular case, the test is the amount of care ordinarily used by men in general, in similar circumstances. If it be matter of common knowledge, such amount of care needs no proof—the jury take notice of it. But if it pertain to some special business which the jury cannot be supposed to know, it may be proved." See also *Comstock* v. *Georgetown,* 137 Mich. 541, 562, 100 N. W. 788.

The ruling in *Bassett* v. *Shares,* supra, 43, was an

application of this principle. When evidence of a common practice or custom is offered, the question whether it will be of sufficient assistance in determining the ultimate question of negligence to make it properly admissible, in view of the collateral issues which may be raised and the danger of its misuse, must rest in the discretion of the court. *Moynihan* v. *Holyoke*, 193 Mass. 26, 29, 78 N. E. 742. Under the claims of proof of the parties and the exhibits in evidence in this case, the jury, using their common knowledge and experience, had ample basis upon which to determine whether or not the plaintiff was guilty of negligence in walking along the traveled portion of the highway. The trial court was justified in excluding the evidence.

The defendant testified on direct examination that he had had nothing to drink before the accident, but that he had drunk a whiskey and beer afterward, giving this as his explanation of the odor of liquor on his breath which Officer Shine testified he had noted. Upon cross-examination the defendant stated that, while at the time of trial he knew that it was important to inform the police that the drinks he had had were taken after and not before the accident, he had not known that this was important at the time when he talked to Shine shortly after the accident, thus intimating that it was for this reason that, as he admitted, he had not then told Shine that he did not have them until after. He was then asked: "Was this investigation by police officers of your driving anything new to you?" The court's exclusion of the question on the defendant's objection is assigned as error. The question, if it were to serve any purpose, necessarily would have led into a collateral inquiry, of scope and extent

materially beyond that of this specific interrogation. Its sole purpose was to attack the defendant's credit. The extent to which cross-examination to affect credit will be permitted to raise collateral issues rests largely in the discretion of the trial court. *State* v. *McGowan,* 66 Conn. 392, 396, 34 A. 99; *State* v. *Esposito,* 122 Conn. 604, 609, 191 A. 341; 3 Jones, Evidence (4th Ed.), p. 1553. We cannot say that the court abused its discretion in excluding this inquiry.

There is no error.

In this opinion the other judges concurred.